## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **DAVID BAESEL**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**INTERMEX WIRE TRANSFER, LLC,** a Florida Limited Liability Company,<br><br>*Defendant.* | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff David Baesel ("Plaintiff" or "Baesel") brings this class action against Defendant Intermex Wire Transfer, LLC ("Defendant" or "Intermex") to stop Defendant's practice of sending unsolicited text messages to the cellular telephones of consumers throughout the nation and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Senator Hollings, one of the original sponsors of the Telephone Consumer Protection Act ("TCPA"), described [robocalls] as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone cord out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Fram Bank, F.S.B.,* 746 F.3d 1242,

1

1256 (11th Cir. 2014). Thus, the TCPA was enacted to empower the private citizen and protect the privacy (and perhaps the sanity) of consumers nationwide.

2.      But, unfortunately, illegal robocalls and unsolicited text messages continue to increase and further invade the privacy of millions of consumers. Last year, in 2016, 4 million complaints related to robocalling were lodged with the Federal Communications Commission (the "FCC").[1] This number is markedly higher than the previous year, which yielded 2.6 million complaints (which rose from the year before that). [2] Notably (and inauspiciously), many consumers who have been subjected to illegal robocalling activity do not report each instance of illegal robocalling activity, and the actual number of consumers affected by illegal robocalls *could be close to 10 million*.

3.      Defendant Intermex is a company specializing in the processing of money transfer services in the United States and Latin America. Intermex's customers receive notification text messages from Intermex informing them that the money sent has been received by the recipient.

4.      Unfortunately for consumers, in these notification attempts, Defendant has sent (and continues to send) repeated text messages to cellular telephones belonging to people who

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 - September 30, 2016,* FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwated-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015,* FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf: *Consumer Complaints Data - Unwanted Calls, FCC - Open Data,* FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones,* FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014,* FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

*have not* given their prior express consent to Defendant to be contacted--in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

5.      By sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, and nuisance and invasions of privacy that result from the receipt of such text messages in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages. Furthermore, the text messages interfered with Plaintiff's and the other Class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular data and minutes.

6.      The TCPA was enacted to protect consumers from unsolicited text messages like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited text-messaging activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees

## PARTIES

7.      Plaintiff David Baesel is a natural person and citizen of the State of Florida, residing in the City of Lakeland.

8.      Defendant Intermex is a Florida limited liability company with a principal place of business located at 9480 South Dixie Highway, Miami, Florida 33156.

## JURISDICTION AND VENUE

9.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

10.     The Court has personal jurisdiction over Defendant because it solicits significant business in this District, and the text messages at issue were directed to and/or emanated from this District, and the unlawful conduct alleged in this Complaint occurred in and/or emanated from this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and the causes of action arose, in substantial part, in this District. Venue is additionally proper as Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

12.     Defendant is a company that offers money-transferring services and sends to consumers notification text messages.

13.     Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

14.     The TCPA prohibits companies from placing autodialed text messages to cell phones without prior express consent.

15.     Yet in violation of this rule, Defendant fails to obtain any prior express consent to send these text messages to cellular telephone numbers.

16.     In sending the text messages that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of sending numerous text messages simultaneously and automatically connecting answered calls (text messages are calls under the TCPA) to then available callers and disconnecting the rest (all without human intervention).

17.     In fact, Defendant acknowledges that it sends notification text messages on its own website as shown below:

## How do I know my recipient received their funds?

Throughout the money transfer process, we will notify you via Text message and or e-mail when any status changes are made to your order — and this, of course, includes when your recipient receives their funds. We want to make sure you are aware of any changes to your order when they happen, as they happen.

18.     The image reads, in pertinent part, "Throughout the money transfer process, we will notify you via Text message and or e-mail when any status changes are made to your order - and this, of course, includes when your recipient receives their funds.

19.     Below is another image showing that consumers can sign up to receive notification text messages from Defendant:

5

Wire Transfer



We know Latin America. In fact, our dedicated customer service, the best in the industry, is greatly focused on Latin America. With Intermex, you can trust that your loved ones will receive their money quickly. Signup for SMS alerts so that you can stay informed on the status of your wire each step of the way.

20.     The image reads, in pertinent part, "[s]ignup for SMS alerts so that you can stay informed on the status of your wire each step of the way."

21.     Unfortunately for unsuspecting consumers, Defendant's automated system keeps sending text messages to consumers who have no relationship with Defendant and have never signed up with Defendant's service.

22.     Consumer complaints about Defendant's conduct are legion:

- Have gotten a text from this one twice in three days - in Spanish, yet.  The lateset one reads: "Su giro termina en 4972 ha sido recogido el dia Mar 25 2015 8:36 PM Gracias por usar Intermex.  Envie STOP para cancelar notificaciones." Google Translate says: "Your turn ends in 4972 has been picked the day Mar 25 2015 8:36 PM Thank you for using Intermex.  Send STOP to cancel notifications."[3]
- Received = su giro que termina en 6838 ha sido recogido el dia 01/06/2016 at 12:14 pm WHAT!!! - I HAVE NEVER USED INTERMEX - scam!![4]
- Same with me but cant reach them its been around 1 year and every sat or Sunday I get their msg [response to above][5]
- Su giro que termina en 9398 ha sido recogido el dia May 31, 2016 Gracias por usar Intermex.Envie STOP para cancelar notificaciones[6]
- THIS IS WHAT THE MESSAGE SAID I DONT KNOW WHAT OR WHO THIS IS AND I NEVER SIGNED UP FOR ANYTHING"Su giro termina en

---

[3] https://800notes.com/Phone.aspx/1-954-266-0535.

[4] *Id.*

[5] *Id.*

[6] *Id.*

4972 ha sido recogido el dia Mar 25 2015 8:36PM Gracas por usar Intermex. Envie STOP para cancelar notificaciones."[7]

23.     Defendant knowingly sent (and continues to send) text messages without the prior express consent of the text-message recipients.   As such, Defendant not only invaded the personal privacy of Plaintiff and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF DAVID BAESEL

24.     On or around 2017, Baesel received a series of text messages from 954-266-0535 (the "0535 Number").

25.     Intermex controls the 0535 Number to send text messages to consumers.

26.     Baesel has received approximately four (4) similar text messages from the 0535 Number.

27.     As an example, Baesel received the following text message from the 0535 Number on his cellular telephone, "Su giro que termina en 1243 ha sido recogido el dia Oct 2 2017 2:15PM Gracias por usar Intermex Envie STOP para cancelar notificactiones."

28.     Baesel never consented in writing or otherwise to receive autodialed text messages on his cellular telephone from Intermex.

29.     Baesel does not have a relationship with Intermex, has never provided his telephone number to Intermex, and has never requested that Intermex send text messages to him. Simply put, Baesel has never provided any form of prior express consent to Intermex to send text messages to him and has no business relationship with Intermex.

30.     By sending unauthorized text messages to consumers' cellular telephones as alleged herein, Intermex has caused consumers actual, concrete harm and annoyance. In the

---

[7] http://findwhocallsyou.com/9542660535.

present case, a consumer could be subjected to many unsolicited autodialed text messages, as Intermex fails to obtain a consumer's express consent before sending the unwanted text messages.

## CLASS ALLEGATIONS

31.     In order to redress these injuries, Plaintiff, on behalf of himself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones.

32.     On behalf of the Class, Plaintiff seeks an injunction requiring Intermex to cease all unauthorized text-messaging activities, declaratory relief establishing that Intermex's text messages violated the TCPA, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

33.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the Class defined as follows:

**Text Message No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages; (2) to the person's cellular telephone number; and (3) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to send a text message to the Plaintiff.

34.     The following people are excluded from the Class: any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such

excluded persons. Plaintiff anticipates the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Class and the manner by which Defendant claims it obtained prior express consent.

35.    **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant sent autodialed text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records and by reference to other objective criteria.

36.    **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Class on which every Class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Class includes, without limitation:

      (a)    Whether Defendant's conduct violated the TCPA;

      (b)    Whether Defendant utilized an ATDS as defined by the TCPA;

      (c)    Whether Defendant systematically sent autodialed text messages to individuals who did not provide Defendant and/or its agents with their prior express consent to receive such text messages; and

37.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff is a member of the Class, and if Defendant violated the TCPA to send a text message to Plaintiff then it violated the TCPA to send text messages to the other class members. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

38.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

39.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a respective whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a respective whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a respective whole, not on facts or law applicable only to Plaintiff.

40.     **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express consent to send text messages and whether Defendant used an ATDS go to the very heart of the case and are facts on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

41.     **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual

members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff and the Text Message No Consent Class)**

42.     Defendant sent unsolicited and unwanted text messages to telephone numbers belonging to Plaintiff and the other members of the Text Message No Consent Class—without their prior express consent.

43.     At no time did Defendant obtain prior express consent from the members of the Text Message No Consent Class to contact them on their cellular telephones using an ATDS.

44.     Further, Defendant sent the text messages using equipment that had the capacity to store or produce telephone numbers to be called (and/or texted) using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls (and/or text messages) to Plaintiff and other members of the Text Message No Consent Class simultaneously and without human intervention.

45.     By sending unsolicited and autodialed text messages to Plaintiff and members of the Text Message No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

46.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Text Message No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

## PRAYER FOR RELIEF

47.     An order certifying the Class as defined above, appointing Plaintiff David Baesel as the representative of the Class and appointing his counsel as Class Counsel;

48.     A declaratory judgment declaring that Defendant's text messages violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, and that Defendant failed to obtain prior express consent to send text messages to Plaintiff or any of the Class members;

49.     An award of actual and statutory damages to be paid into a common fund for the benefit of the Class Members;

50.     An injunction requiring Defendant and its agents to cease all unsolicited text-messaging activities and otherwise protecting the interests of the Class;

51.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, text-message recipient's prior express consent to receive such text messages made with such equipment;

52.     An injunction prohibiting Defendant from contracting with any third-party for autodialing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

53. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful prerecorded telephone calling activities;

54. An award of reasonable attorneys' fees and costs to be paid from the common fund; and

55. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 31, 2017

Respectfully submitted,

**DAVID BAESEL**, individually and on behalf of all others similarly situated,

By: */s/Stefan Coleman*
Stefan Coleman (0030188)
Law@StefanColeman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd., 28th floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

and

By: */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo (FL 0030380)
mhiraldo@hiraldolaw.com
HIRALDO P.A.
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the Class*